**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Victor A. Duran,<br><br>  Plaintiff,<br><br>vs.<br><br>Michael J. Astrue, Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-12-00360-PHX-NVW<br><br>**ORDER** |

Plaintiff Victor A. Duran seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him disability insurance benefits and supplemental security income under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.   BACKGROUND**

  **A.   Factual Background**

Duran was born in October 1971. He attended high school, but dropped out his junior year. He is able to communicate in English. He worked in lighting maintenance, but has not worked since November 14, 2008, when he had a heart attack at the age of 37 and underwent coronary bypass surgery. Duran did not return to work at any time after the surgery even though in December 2008 he reported minimal shortness of breath and

minimal fatigue and in January 2009 he denied any chest pain, shortness of breath, palpitations, lightheadedness, dizziness, or fainting. On March 17, 2010, two stents were placed to address additional blockage after Duran had experienced three or four weeks of occasional chest pain at rest. Duran has been diagnosed with coronary artery disease and asthma.

Duran is married and has three children, who were ages 12, 16, and 18 at the time of the administrative hearing in July 2010. Duran testified that he does not drive and does not do any household chores. His wife drives him to church and medical appointments, and friends come to his house to visit. Duran reported that at the time of the administrative hearing he was able to walk about half a block before stopping to rest.

### B. Procedural History

In November and December 2008, Duran protectively applied for disability insurance benefits and supplemental security income. He alleged disability beginning November 14, 2008. On July 8, 2010, he appeared with his attorney and testified at a hearing before the ALJ. A vocational expert also testified.

On September 23, 2010, the ALJ issued a decision that Duran was not disabled within the meaning of the Social Security Act. The Appeals Council denied Duran's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On February 21, 2012, Duran sought review by this Court.

## II. STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a

- 2 -

preponderance, and relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). As a general rule, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

**III.    FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but at step five, the burden shifts to the Commissioner. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id.* At the step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step,

- 3 -

where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## IV.  ANALYSIS

The ALJ found that Duran meets the insured status requirements of the Social Security Act through June 30, 2009, and that he has not engaged in substantial gainful activity since November 14, 2008. At step two, the ALJ found that Duran has the following severe impairments: coronary artery disease, status-post coronary artery bypass graft, and asthma. At step three, the ALJ determined that Duran does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404.

At step four, the ALJ found that Duran:

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). In addition, the postural and environmental limitations set forth in Exhibit 5F are incorporated herein and made a part of the claimant's residual functional capacity assessment.

"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b). "Light work" may require "a good deal of walking or standing." *Id.* The postural and environmental limitations set forth in Exhibit 5F, an assessment prepared by medical consultant Erika Wavak, M.D., are: occasionally crawl and climb ladder/rope/scaffolds; frequently climb ramp/stairs, balance, stoop, kneel, and crouch; and avoid concentrated exposure to extreme cold, extreme heat, fumes, odors, dust, gases, poor ventilation, and hazards (machinery, heights, etc.).

- 4 -

At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Duran can perform. Duran challenges the ALJ's findings at the steps four and five.

### A.  The ALJ Did Not Err in Weighing Medical Source Evidence.

#### 1.  Legal Standard

In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* A treating physician's opinion is afforded great weight because such physicians are "employed to cure and [have] a greater opportunity to observe and know the patient as an individual." *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987). Where a treating physician's opinion is not contradicted by another physician, it may be rejected only for "clear and convincing" reasons, and where it is contradicted, it may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. *Lester*, 81 F.3d at 830. Moreover, the Commissioner must give weight to the treating physician's subjective judgments in addition to his clinical findings and interpretation of test results. *Id.* at 832-33.

Further, an examining physician's opinion generally must be given greater weight than that of a non-examining physician. *Id.* at 830. As with a treating physician, there must be clear and convincing reasons for rejecting the uncontradicted opinion of an examining physician, and specific and legitimate reasons, supported by substantial evidence in the record, for rejecting an examining physician's contradicted opinion. *Id.* at 830-31.

The opinion of a non-examining physician is not itself substantial evidence that justifies the rejection of the opinion of either a treating physician or an examining physician. *Id.* at 831. "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas*, 278 F.3d at 957. Factors that an ALJ may consider when evaluating any medical opinion include "the amount of relevant evidence that supports the opinion and the quality of the explanation provided; the consistency of the medical opinion with the record as a whole; [and] the specialty of the physician providing the opinion." *Orn*, 495 F.3d at 631.

Moreover, Social Security Rules expressly require a treating source's opinion on an issue of a claimant's impairment be given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2). If a treating source's opinion is not given controlling weight, the weight that it will be given is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, relevant evidence supporting the opinion, consistency with the record as a whole, the source's specialization, and other factors. *Id.*

### 2. Treating Cardiologist Thomas Perry, M.D.

Dr. Perry first examined Duran on November 14, 2008, the same day Duran underwent emergency coronary bypass surgery. On September 9, 2009, he saw Duran again. Dr. Perry noted that Duran reported he had been unable to work because he could not continue lifting and climbing the way he did before the bypass surgery and that Duran denied chest pain, shortness of breath, and palpitations. Dr. Perry documented that they planned to recheck Duran in one month with lab tests.

On October 20, 2009, Dr. Perry saw Duran again and noted that Duran complained of fatigue and low pulse rate. Dr. Perry modified Duran's prescribed medications. On

November 11, 2009, he examined Duran and adjusted his medications. Dr. Perry noted that Duran reported he was able to walk one block asymptomatically and could walk for up to 45 minutes. On December 12, 2009, Dr. Perry saw Duran and added niacin to his medications. He noted that Duran reported having less fatigue and walking 15 minutes twice a day.

On February 23, 2010, Dr. Perry saw Duran and adjusted his medications. He recorded that Duran "complained of chest pain and pallor last night while installing a door," which was associated with shortness of breath and near fainting. Dr. Perry also wrote, "He is here today able to walk 50 yards and stopped due to shortness of breath." On April 1, 2010, Dr. Perry saw Duran and adjusted his medications. He noted that Duran "complains of minimal chest pains" following the March 17, 2010 placement of two stents. On May 4, 2010, Dr. Perry saw Duran and adjusted his medications. He noted that Duran "has been asymptomatic and feeling better" and would have his next appointment in four months.

On July 7, 2010, Dr. Perry completed a Cardiac Residual Functional Capacity Questionnaire. He identified Duran's diagnosis as coronary artery disease and his symptoms as chest pain, shortness of breath, fatigue, palpitations, and dizziness. Regarding the frequency, nature, location, radiation, precipitating factors, and severity of Duran's anginal pain, Dr. Perry wrote, "qod," suggesting every other day. Dr. Perry indicated that Duran has marked limitation of physical activity as demonstrated by fatigue, palpitation, shortness of breath, or anginal discomfort on ordinary physical activity even though comfortable at rest. Dr. Perry wrote that Duran could walk half a block without rest or severe pain. He assessed Duran as being able to stand/walk less than 2 hours and sit about 4 hours in an 8-hour working day with normal breaks. He opined that Duran needs a job that permits shifting positions at will from sitting, standing, or walking, and that Duran will sometimes need to take unscheduled breaks during an 8-

hour working day. He opined that Duran could occasionally lift and carry less than 10 pounds, but never more, and rarely twist or climb stairs, but never stoop/bend, crouch/squat, or climb ladders. In response to the question "Are your patient's impairments likely to produce 'good days' and 'bad days'?" Dr. Perry checked "No."

Duran contends that because the ALJ did not give Dr. Perry's opinion controlling weight, he was required to make findings that the opinion was not supported by medically acceptable clinical and laboratory diagnostic techniques and/or it was inconsistent with the other substantial evidence in the record. *See* 20 C.F.R. § 404.1527(d)(2). Although the ALJ's decision does not expressly refer to "findings," it states that Dr. Perry's opinion was inconsistent with other substantial evidence in the record. It summarizes the medical records, including those showing "a successful surgical outcome" following the November 14, 2008 bypass surgery and subsequent continued improvement through December 2009. It states, "In April and May 2010, progress notes document that the claimant was asymptomatic and 'feeling better.'" The ALJ concluded that he rejects Dr. Perry's assessment because "it is inconsistent with the weight of the probative evidence and inconsistent with Dr. Perry's own medical records, which indicate that in April and May 2010, the claimant was asymptomatic and that objective findings were negative for ischemia."

Thus, the ALJ did not err by rejecting Dr. Perry's July 7, 2010 opinion regarding Duran's residual functional capacity.

### B. At Step Four, the ALJ Did Not Err by Omitting Nonexertional Limitations in His Residual Functional Capacity Assessment.

The July 7, 2010 Cardiac Residual Functional Capacity Questionnaire completed by Dr. Perry also asked questions related to nonexertional limitations. In response to the question "What is the role of stress in bringing on your patient's symptoms?" Dr. Perry wrote "unknown." In response to the question "To what degree can your patient tolerate

- 8 -

work stress?" Dr. Perry selected "Capable of low stress jobs."  Dr. Perry indicated that Duran's physical symptoms and limitations cause emotional difficulties, but for explanation wrote only "anxiety/depression."  Dr. Perry also indicated that emotional factors contribute to the severity of Duran's subjective symptoms and functional limitations.  In response to the question "How often during a typical workday is your patient's experience of cardiac symptoms (including psychological preoccupation with his/her cardiac condition, if any) severe enough to interfere with attention and concentration needed to perform even simple work tasks?" Dr. Perry selected "Frequently."  Dr. Perry did not expressly opine that Duran has a psychological preoccupation with his cardiac condition.

Duran contends the ALJ erred by not including in the residual functional capacity assessment nonexertional limitations indicated by Dr. Perry in the July 7, 2010 Cardiac Residual Functional Capacity Questionnaire or by not providing specific and legitimate reasons for rejecting this specific portion of Dr. Perry's opinion.  Duran reasons:

> It hardly stretches the imagination to accept that a man who is 37, married, with three children who suffered a "massive heart attack leaving him with permanent heart damage and unable to support his family, would not suffer some anxiety and psychological symptoms affecting his day-to-day activities including work.

In other words, Duran contends it is reasonable to assume that he is unable to work because he is anxious about being unable to work.  But Dr. Perry opined that Duran was capable of tolerating low stress jobs, despite frequent interference with attention and concentration.  Further, Dr. Perry did not treat Duran for anxiety or psychological symptoms, document any observations about Duran's anxiety or psychological symptoms, or refer him to a medical provider for treatment of anxiety or psychological

- 9 -

symptoms. There is no other evidence in the record to support a nonexertional limitation regarding Duran's attention and concentration on work tasks.

Because Dr. Perry's opinion did not include any nonexertional limitation beyond "low stress jobs," the ALJ did not err by omitting a nonexertional limitation in his assessment of Duran's residual functional capacity.

### C. At Step Five, the ALJ Did Not Err by Not Soliciting the Opinions of the Vocational Expert Regarding the Effect of Duran's Nonexertional Impairments on the Job Base.

#### 1. Legal Standard

At step five, after having determined that Duran's disabilities prevent him from doing his past relevant work, the ALJ was required to decide whether Duran's impairments prevent him from performing other work that exists in the national economy, considering his residual functional capacity together with the "vocational factors" of age, education, and work experience. Social Security Ruling 00-4p. Work is considered as existing in the national economy when both (1) its requirements can be met by the claimant with his or her physical or mental abilities and vocational qualifications, and (2) it exists in significant numbers either in the region where the claimant lives or in several other regions of the country. 20 C.F.R. § 404.1566(a), (b). The Commissioner may use the services of a vocational expert or other specialist to determine whether a claimant's work skills can be used in other work and the specific occupations in which they can be used. 20 C.F.R. § 404.1566(e).

#### 2. Vocational Expert Testimony

Vocational expert George J. Bluth testified in this matter at the July 8, 2010 administrative hearing. Duran contends that the ALJ erred by failing to solicit Bluth's opinion as to the effect Duran's nonexertional limitations would have on the job base. As found above, the record does not show that Duran has any nonexertional limitation.

- 10 -

Therefore, the ALJ did not err by failing to solicit any opinion regarding a nonexertional limitation.

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 13th day of December, 2012.

_____
Neil V. Wake
United States District Judge